UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────
MAM APPAREL & TEXTILES LTD.,

              Plaintiff,

      -against-

NCL WORLDWIDE LOGISTICS USA, INC.;
AMERICAN SHIPPING AND LOGISTICS INC.;
EXPRESS TRADE CAPITAL, INC.; SWIFT
TRANSPORTATION LIMITED; BANK LEUMI
USA; and JPMORGAN CHASE BANK, N.A.,

              Defendants.
─────────────────────────────────

**MEMORANDUM & ORDER**
**19-CV-3750 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff MAM Apparel & Textiles LTD. ("MAM") brings this action for, *inter alia*, allegedly wrongful dishonor of certain letters of credit and fraud. (*See generally* Compl. (Dkt. 1).) Defendant Bank Leumi USA now moves to dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(6). (*See* Mot. to Dismiss (Dkt. 25); Mem. in Supp. of Mot. ("Mem.") (Dkt. 26); Mem. in Opp. to Mot. ("Opp.") (Dkt. 27); Reply (Dkt. 29).) For the following reasons, Bank Leumi's motion is GRANTED.

**I.   BACKGROUND**

The following factual summary is drawn from the facts alleged in the complaint, which the court generally accepts as true. *See N.Y. Pet Welfare Ass'n v. City of New York,* 850 F.3d 79, 86 (2d Cir. 2017).[1] The court also considers those documents attached to the complaint or incorporated by reference, documents over which it may take judicial notice, and documents so central to the complaint as to be considered integral thereto. *Id.* Further,

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted and all alterations are adopted.

while the complaint contains allegations against each Defendant, the court summarizes only those facts relevant to MAM's claims against Bank Leumi.

MAM is a foreign corporation which conducts business in Bangladesh. (Compl. ¶ 1.) Bank Leumi is a New York State chartered bank. (*Id.* ¶ 8.) In or around February 2017, Defendant Express Trade Capital, Inc. ordered approximately 69,156 pieces of apparel totaling $96,530.25 from MAM (the "February Order").[2] (*Id.* ¶ 20.) The February Order was processed in two shipments, pursuant to two commercial invoices. (*Id.* ¶ 21.) The first shipment contained 25,040 pieces totaling $34,951.67, and the second shipment contained 44,116 pieces totaling $61,578.58. (*Id.*) The February Order was secured by a letter of credit issued by Bank Leumi to the benefit of Plaintiff (the "L/C"). (*Id.* ¶ 22; *see also* L/C (Dkt. 1 at ECF 23-25).)

The L/C provides for the release of funds upon the presentation of certain documents, including, *inter alia*: (1) a commercial invoice; (2) an ocean bill of lading; (3) a signed telefax; and (4) an authenticated SWIFT message stating that an authorized representative has inspected the goods prior to shipment and that the shipment is authorized. (L/C at ECF 23.) The L/C further provides that it is governed by UCP 600, the latest version of the Uniform Customs and Practice for Documentary Credits (the "UCP"). (*Id.* at ECF 24).

On April 9, 2017, Plaintiff (through Basic Bank, its advising bank in Bangladesh) transmitted shipping documents for the first shipment, specifically a Bill of Exchange, Commercial Invoice, Packing List, Air Way Bill, Inspection Certificate, and Certificate

---

[2] The complaint alleges that the total value of the February order was $96.563.30. However, this appears to be an error, given that the combined value of the shipments comprising the February order is $96,563.25 and the letter of credit securing said order was in the amount of $96.563.25.

of Origin, with originals and copies, to Bank Leumi. (Compl. ¶ 25.)

On April 14, 2017, approximately five days after Plaintiff transmitted documents for the first shipment, Bank Leumi sent a SWIFT network message[3] to Basic Bank notifying it of discrepancies in the provided documents. (*Id.* ¶ 27.) Specifically, the message stated that copies of the of shippers/beneficiary's detailed telefax and authenticated SWIFT message had not been presented, the inspection certificate did not conform to the L/C's requirement, and that shipment by air was not in accordance with the L/C's requirements. (Apr. 14, 2017 SWIFT Mess. (Dkt. 25-2).) Further, the message contained a "77B - /NOTIFY/" code. (*Id.*)

On April 17, 2017, Plaintiff, through Basic Bank, transmitted shipping documents for the second shipment, specifically a Bill of Exchange, Commercial Invoice, Packing List, Air Way Bill, Inspection Certificate, and Certificate of Origin, with originals and copies, to Bank Leumi.. (Compl. ¶ 26.)

On April 25, 2017, approximately eight days after Plaintiff transmitted the documents for the second shipment, Bank Leumi sent another SWIFT Message to Basic Bank notifying it of discrepant documents. (Apr. 26, 2017 SWIFT Mess. (Dkt. 25-3).) This message was materially identical to the April 14, 2017 message.

On May 16, 2017, Basic Bank sent a SWIFT message to Bank Leumi inquiring about the payment status of the L/C, to which Bank Leumi never replied. (Compl. ¶ 31.) On May 23, 2017, the L/C expired. (L/C at ECF 22.) On June 16, 2017, Bank Leumi informed Basic Bank that it was discharging the L/C, returning

---

[3] The court takes judicial notice of the fact that Society Worldwide Interbank Financial Telecommunication ("SWIFT") provides an electronic communication system by the same name for use in interbank correspondence.

the shipping documents for both shipments of the February Order, and charging MAM a total of $780.00 in fees. (Compl. ¶ 32.) To date, Bank Leumi has not disbursed any funds to MAM. (*Id.* ¶ 33.)

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making this determination, the court need not credit "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678.

Federal Rule of Civil Procedure 9(b) creates a heightened pleading standard for fraud claims that requires the party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." To satisfy this standard, a complaint must generally: "(1) specify the statement that the Plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F. 3d 1170, 1175 (2d Cir. 1993).

## III. DISCUSSION

Bank Leumi argues Plaintiff's claim for wrongful dishonor of the L/C fails as a matter of law because Plaintiff did not present conforming documents. (Mem. at 4.) Bank Leumi further asserts that it timely and adequately notified Plaintiff of these discrepancies as required under the UCP. (*Id*. at 6.) Finally, Bank Leumi argues that Plaintiff's fraud claim fails to allege any misrepresentation and thus fails as a matter of law. (*Id.* at 7.) For the reasons that follow, the court agrees and, accordingly, grants Bank Leumi's motion.

A. **Wrongful Dishonor Claim**

1. Plaintiff Did Not Provide Strictly Conforming Documents

"To prevail on a claim for wrongful dishonor of a letter of credit, a plaintiff must demonstrate: (1) that there exists a letter of credit issued by the defendant for the benefit of the plaintiff; (2) that the plaintiff timely presented conforming documents to the defendant as required by the letter of credit; and (3) that the defendant failed to pay the plaintiff on the letter of credit." *ACR Sys., Inc. v. Woori Bank*, 232 F. Supp. 3d 471, 478 (S.D.N.Y. 2017). In reviewing a plaintiff's submission of documents, the bank has a ministerial role that imparts no obligation to go beyond the face of documents. *See Mago Int'l v. LHB AG*, 833 F.3d 270, 272 (2d Cir. 2016); *Alaska Textile Co. v. Chase Manhattan Bank, N.A.*, 982 F.2d 813, 816 (2d Cir. 1992). As such, to satisfy the second element of a wrongful dishonor claim, the plaintiff must demonstrate strict compliance with the terms of the letter of credit. *See Mago Int'l*, 833 F.3d at 272.

Although documents must be precisely conforming, courts in this circuit have allowed exceptions to this standard for minor variations. This exception is very narrow, and the variation must be minor, such as where a word in a document is unmistakably clear despite a typographical error. *See Creaciones con Idea, S.A. de C.V. v. MashreqBank PSC*, 51 F. Supp. 2d 423, 427 (S.D.N.Y. 1999); *see also Bank of Cochin, Ltd. v. Mfrs. Hanover Tr. Co.*, 612 F. Supp. 1533, 1541 (S.D.N.Y. 1985) (providing five copies of required documents instead of six copies as specified by letter of credit did not amount to noncompliance); *but see Mago Int'l* 833 F.3d at 270 (unsigned bill of lading did not comply with letter of credit's requirement that plaintiff "provide a photocopy of a bill of lading evidencing shipment of the goods to the applicant").

Here, among other documents, the L/C required: (1) a signed telefax; (2) an authenticated SWIFT message; and (3) an ocean

bill of lading. Plaintiff alleges it sent Bank Leumi originals and copies of a Bill of Exchange, Commercial Invoice, Packing List, Air Way Bill, Inspection Certificate, and Certificate of Origin for the first shipment on April 9, 2017, and the same for the second shipment on April 17, 2017. The question, thus, is whether presentation of these documents constitutes strict compliance with the L/C's conditions. The answer to this question is no.

While Plaintiff is correct that *minor* discrepancies between the documents presented and the documents required under a letter of credit are permissible, the discrepancies here are not minor. First, Plaintiff provided an air way bill instead of an ocean bill of lading. *See Bd. Of Trade of San Francisco v. Swiss Credit Bank*, 728 F.2d 1241, 1243 (9th Cir. 1984) (presentation of air way bill where letter of credit required bill of lading noncompliant as a matter of law justifying dishonor) (applying prior UCP version); *see also CVD Equip Corp. v. Taiwan Glass Indus. Corp.* No. 10-cv-573 (RJH), 2011 WL 1210199, at *3 (S.D.N.Y. Mar. 21, 2011) (where letter of credit required "clean on board ocean bill of lading," bill of lading that "d[id] not indicate that the shipment was placed on a ship" was noncompliant as a matter of law). Moreover, it remains undisputed that Plaintiff did not provide the required signed telefax, authenticated SWIFT message, and ocean bill of lading; nor was the inspection certificate as the L/C required. Completely omitting documents and providing nonconforming shipping documents are likewise not "minor variances." As such, Plaintiff cannot make out a wrongful dishonor claim.

> 2. Bank Leumi Timely and Adequately Notified Plaintiff of Discrepancies.

Notwithstanding Plaintiff's failure to demonstrate its own strict compliance, the UCP required Bank Leumi to send notice to Plaintiff stating that: (1) the bank is refusing to honor or negotiate; (2) each discrepancy in respect of which the bank refuses to

honor or negotiate; and (3) that the bank is holding the documents pending further instructions from the presenter, or until the bank receivers a waiver from the applicant, or that the bank is returning the documents, or that the bank is acting in accordance with instructions previously received from the presenter. *See* UCP Art. 16(c). This notice must "be given by telecommunication or by other expeditious means no later than the close of the fifth banking day following the day of presentation." *See* UCP Art. 16(d); *see also* UCP Art. 14(b). Failure to provide such notice would estop Bank Leumi from asserting that its dishonor was justified because the presentation was nonconforming. *See* UCP Art. 16(e); *ACE Am. Ins. Co. v. Bank of the Ozarks*, No. 11-cv-3146 (PGG), 2014 WL 4953566, at *9 (S.D.N.Y. Sept. 30, 2014) (collecting cases) (analyzing prior UCP version).

In support of its motion, Bank Leumi attached the SWIFT messages it sent to Basic Bank advising it of the discrepant presentation. These messages are referenced in the complaint (*see* Compl. ¶ 27), and since there is no dispute over their authenticity, the court considers them. *Cf. Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d. Cir. 2016) ("Even where a document is considered integral to the complaint, it must be clear on the record that no dispute exists regarding authenticity or accuracy of the document.").

Plaintiff argues that Bank Leumi's notices were deficient and untimely; the court disagrees as to both contentions. Both the April 14, 2017 and April 26, 2017 SWIFT messages explicitly specify that the telefax and authenticated SWIFT message were not presented and that the inspection certificates were not in conformity with the L/C. Plaintiff does not dispute that it was notified of these discrepancies. However, Plaintiff argues that such notice was deficient because Bank Leumi did not "attempt" to provide notice by telecommunication, as expressed in UCP Art. 16(d). (Opp. at 11.) This argument is nonsensical. As previously noted,

7

SWIFT messages are a form of telecommunication. *See supra* n.2; *see also EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 204 n.3 (2d Cir. 2012) ("SWIFT … is an electronic messaging system that provides instructions to banks, brokerages, and other financial institutions for money transfers.").

Plaintiff's next argument, that the notices were deficient because Bank Leumi did not notify it that they were holding onto the shipping documents, also fails. Both SWIFT messages contain a "77B-/NOTIFY/" code, indicating that the documents are being held until the issuing bank receives a waiver from the applicant and agrees to accept it or receives further instructions from the presenter.[4] It is undisputed that neither Plaintiff nor Basic Bank provided further instructions or a waiver. Instead, on May 16, 2017, a *month* after Bank Leumi's initial SWIFT notification, Basic Bank inquired as to the *payment* status of the goods. (Compl. ¶ 31.) Plaintiff's argument that Bank Leumi's silence after its initial SWIFT notification made Plaintiff believe that it

---

[4] *See Standards: Category 7 Documentary Credits and Guarantees*, at 172, available at https://www.swift.com/swift-resource/164981/download. ("NOTIFY Documents held until the issuing bank receives a waiver from the applicant and agrees to accept it, or receives further instructions from the presenter prior to agreeing to accept a waiver."). The court takes judicial notice of this document; it is publicly available and not subject to dispute. The court notes, however, that this document is dated April 21, 2017, several days after the first SWIFT message was sent. In the absence of any United States case law discussing this particular SWIFT code, the court also takes judicial notice of a decision issued by the Queen's Bench Division of the High Court of Justice of England and Wales solely for the proposition that the NOTIFY code has been in use since at least 2013. *See Bulgrains & Co v Shinhan Bank*, [2013] EWHC 2498 (QB) [51] ("Notify … is another industry term of art clearly and unequivocally understood to mean: Documents held until the issuing bank receives a waiver from the applicant and agrees to accept it, or receives further instructions from the presenter prior to agreeing to accept a waiver.").

would honor the L/C notwithstanding Bank Leumi's express notification of noncompliance is also rejected. The notification specifically alerted Plaintiff that further action was necessary.

Equally unavailing is Plaintiff's contention that Bank Leumi did not provide notice of nonconformity by the close of the fifth banking day following presentation, as required by the UCP. Presentation takes place when documents are delivered, not when they are transmitted. *See* UCP Art. 2. It is undisputed that documents for the first shipment were sent to Bank Leumi on April 9, 2017 and that Bank Leumi sent the SWIFT message notifying Plaintiff of discrepancies on April 14, 2017, five calendar days later. As for the second shipment, Plaintiff alleges transmission of documents "on or about April 17, 2017" but does not indicate form of transmission. The L/C requires submission of documents by overnight courier. (L/C at ECF 24.) Drawing inferences in Plaintiff's favor and assuming compliance with this requirement, presentation occurred no earlier than April 18, 2017. The court takes judicial notice of the facts that April 22, 2017 was a Saturday, April 23, 2017 was a Sunday, and that Saturday and Sunday are not banking days. As such, the fifth banking day after April 18, 2017 was April 25, 2017, the date of Bank Leumi's second SWIFT message. As such, this notification was also timely.

Accordingly, Plaintiff's wrongful dishonor claim against Bank Leumi fails as a matter of law and is therefore dismissed.

### B.  Fraud Claim

As discussed *supra*, FRCP 9(b) requires a plaintiff to plead fraud with particularity. Specifically, a fraud complaint should: "(1) specify the statement that the Plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills,* 12 F. 3d at 1175. A plaintiff must also "[a]llege facts that give rise to a strong inference of fraudulent intent."

*First Capital Asset Mgmt, Inc. v. Satinwood, Inc.,* 385 F.3d 159, 179 (2d Cir. 2004). "[T]he essence of fraud is misrepresentation." *United States v. Rutigliano,* 887 F.3d 98, 109 (2d Cir. 2018). Simply asserting that a Defendant never intended to perform its duties under an agreement does not meet the level of deliberate fraud. *Lomaglio Assocs. v. LBK Marketing Corp.,* 892 F. Supp. 89, 95 (S.D.N.Y. 1995).

Here, Plaintiff's fraud allegations are wholly conclusory. Plaintiff does not cite statements, speakers, or any misrepresentations made by Bank Leumi. Further, Plaintiff provides no substantive allegations suggesting any fraudulent intent. Plaintiff concedes that, despite being notified of discrepant shipping documents, Basic Bank failed to obtain a waiver or attempt to correct the discrepancies. Nonpayment occurred at the fault of Plaintiff; no fraudulent intent or malice can be assumed.

Further, Plaintiff's claim that all Defendants named in the complaint "effectuated a plan designed to procure … [g]oods … without full payment tendered to the Plaintiff" (Compl. ¶ 101), does not meet FRCP 9(b)'s pleading standard. Plaintiff alleges no facts supporting an inference that Bank Leumi was ever even in contact with the other Defendants, let alone that they devised some sort of plan. Plaintiff's fraud claim thus fails as well.

## IV. CONCLUSION

For the foregoing reasons, Defendant Bank Leumi USA's (Dkt. 26) Motion to Dismiss is GRANTED. The Clerk of Court is respectfully DIRECTED to terminate Bank Leumi USA as a Defendant in this action.

SO ORDERED.

Dated:   Brooklyn, New York
         July 23, 2020

                                   /s/ Nicholas G. Garaufis
                                   NICHOLAS G. GARAUFIS
                                   United States District Judge